IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PEDRO P., <br><br> Claimant, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Respondent. | No. 20 CV 7708 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Claimant Pedro P.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 4]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and the parties have filed cross-motions for summary judgment [ECF Nos. 13, 16] pursuant to Federal Rule of Civil Procedure 56. For the reasons discussed below, Claimant's

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

Motion for Summary Judgment [ECF No. 13] is denied and the Commissioner's Motion for Summary Judgement [ECF No. 16] is granted.

## PROCEDURAL HISTORY

On November 2, 2018, Claimant filed a Title II application for DIB alleging disability beginning on January 20, 2018. (R. 290–98). His claim was denied initially and upon reconsideration, after which he requested a hearing before an Administrative Law Judge ("ALJ"). (R. 169–95, 204–05). On March 18, 2020, Claimant appeared by telephone and testified at a hearing before ALJ William J. Mackowiak. (R. 34–52). ALJ Mackowiak also heard testimony by telephone on that date from impartial vocational expert ("VE") Aimee Mowery. (R. 52–59). On April 14, 2020, ALJ Mackowiak denied Claimant's claim for DIB. (R. 13–22).

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. See 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity from his alleged onset date of January 20, 2018 through his date last insured of March 31, 2019. (R. 15). At step two, the ALJ found Claimant had a severe impairment or combination of impairments as defined by 20 C.F.R. 404.1520(c). (R. 15–16). Specifically, Claimant has avascular necrosis of the right hip, left hip replacement, bilateral knee degenerative joint disease, and obesity. *Id.* The ALJ also acknowledged several non-severe impairments – back pain, chest pain, and shortness of breath – but concluded there was no evidence that those symptoms resulted in functional limitations lasting at least twelve continuous months. (R. 16).

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16–17). In particular, the ALJ considered listings 1.02(a) and 1.03, as well as the effect of Claimant's obesity in combination with his other impairments. *Id.* Regarding listings 1.02(a) and 1.03, the ALJ noted that the evidence did not support a finding that Claimant is unable to ambulate effectively, which both listings require. (R. 16). Nor did Claimant's obesity, singularly or in combination with other impairments, result in an inability to ambulate effectively under section 1.00, affect the claimant's pulmonary capacity under section 3.00, or cause reduced function in the claimant's cardiovascular system under section 4.00. (R. 16–17).

The ALJ then found Claimant had the residual functional capacity ("RFC") to:

"perform sedentary work as defined in 20 CFR 404.1567(a) except he could lift 10 pounds occasionally and 5 pounds frequently. He could never climb ladders, ropes, or scaffolding, and could occasionally climb ramps and stairs. He was unlimited in balancing, but could occasionally stoop, crouch, kneel, and crawl." (R. 17).

Based on this RFC, the ALJ found at step four that Claimant had past relevant work as a cylinder press operator. (R. 20). The physical demands of this work exceeded Claimant's residual functional capacity, and so the ALJ concluded that Claimant would not be able to perform that past work as actually or generally performed. (R. 20). The ALJ then concluded at step five that, considering Claimant's age, education, past work experience, and residual functional capacity, he is capable of performing other work within the national economy and that those jobs exist in significant numbers. (R. 20–21). Specifically, the VE's testimony, on which the ALJ

3

relied, identified jobs at the sedentary exertional level, including charge account clerk, weight tester, and ticket checker. (R. 21). The ALJ then found Claimant was not under a disability from the disability onset date of January 20, 2018 through March 31, 2019, the date last insured. (R. 21). The Appeals Council declined to review the matter on October 21, 2020, (R. 1–6), making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court. 42 U.S.C. § 405(g); *see, e.g., Smith v. Berryhill*, 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

When a claimant files an application for disability benefits, he or she bears the burden under the Social Security Act of bringing forth evidence that proves his or her impairments are so severe that they prevent the performance of any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *see Bowen v. Yuckert*, 482 U.S. 137, 147–48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy."

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920). Claimant bears the burden of proof at steps one through four, but the burden shifts

4

to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also,* 42 U.S.C. § 405(g); *Fowlkes v. Kijakazi*, 2021 WL 5191346, at *2 (7th Cir. 2021). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. But even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not build a "logical bridge" from the evidence to the conclusion. *Wilder,* 22 F.4th 644 (citing *Butler,* 4 F.4th at 501); *Jarnutowski v. Kijakazi,* 2022 WL 4126293 (7th Cir. 2022). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision.

5

*Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *see also, Gribben v. Kijakazi,* 2022 WL 59404, at *2 (7th Cir. 2022) ("We do not reweigh the evidence or resolve conflicts in it."). "[O]nly if the record compels a contrary result" will the court reverse the ALJ's decision. *Fowlkes*, 2021 WL 5191346, at *2 (quoting *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010)).

## ANALYSIS

The RFC is the "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *Madrell v. Kijakazi,* 25 F.4th 514, 516 (7th Cir. 2022); *Jeske v. Saul,* 955 F.3d 583, 593 (7th Cir. 2020). "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014), as amended (Aug. 20, 2014) (quotation omitted); *see also Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015); SSR 96-8p; 20 C.F.R. § 416.945(a). This also extends to the hypotheticals posed to the vocational expert. *Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2015).

Here, the ALJ concluded Claimant had the RFC to perform sedentary work with additional physical restrictions. (R. 17). Claimant asserts the ALJ ignored the

6

effects of Claimant's avascular necrosis in formulating that RFC, but the Court is unconvinced. The ALJ specifically acknowledged, on multiple occasions, Claimant's avascular necrosis diagnosis and the symptoms it caused. (R. 15) (recognizing Claimant's avascular necrosis of the right hip was a "severe impairment" as defined by 20 CFR 404.1520(c)); (R. 16) (discussing Claimant's "hip degenerative joint disease" and why its symptoms did not meet listing severity for listing 1.02(a)); (R. 17) (noting Claimant's subjective report that he is "in too much pain to work…[and] has pain in his right hip, which needs replacement," and that Claimant said "he could walk about 10 minutes and sit about 15 minutes," after which "he has to get up and stretch"); (R. 18) (crediting the objective medical evidence showing degenerative disease in Claimant's right hip, "which an MRI on March 22, 2019 identified as avascular necrosis of the right femoral head."); (R. 18) (noting the findings of a November 29, 2018 internal medicine examination where, although Claimant's right hip "demonstrated moderate pain, moderate stiffness, and reduced range of motion," Claimant's "gait was normal, he did not require an assistive device, [] he had full motor strength, [and he] was able to get on and off the examination table and arise from a chair without difficulty."); (R. 18–19) (recounting several visits with Claimant's treating physician in 2019 and 2020 where Claimant had a limited range of motion and reduced strength in the right hip and reported ongoing hip pain); (R. 19) (crediting an orthopedic evaluation on December 18, 2019 where x-rays revealed "moderate arthritis of the right hip" and the examining doctor noted it was "too early for surgery" on Claimant's hip and recommended Claimant continue on his conservative course of treatment, exercise, and lose weight.").

While Claimant cites to two physical therapy notes that the ALJ did not explicitly mention, [ECF No. 13-1] at 12 (citing R. 456, 478), the ALJ is not required to discuss every piece of evidence. *Knox v. Astrue*, 327 F. App'x 652, 657–58 (7th Cir. 2009) ("The ALJ need not provide a written evaluation of every piece of evidence, but need only minimally articulate his reasoning so as to connect the evidence to his conclusions."). Moreover, Claimant does not explain how the physical therapy notes conflict with the ALJ's RFC determination, as the notes recount the same symptoms already contained in the record: pain and stiffness in Claimant's right hip. *Knox*, 327 F. App'x at 657 ("[Claimant] does not draw our attention to any evidence that conflicts with the ALJ's conclusion.").

The ALJ fully employed the above-described record evidence to arrive at the maximum function Claimant can still do despite his physical limitations. *Craft*, 539 F.3d at 675–76. In doing so, he far from ignored Claimant's avascular necrosis in formulating the RFC. He simply did not afford to those symptoms the significance Claimant would prefer and conclude they were work preclusive, which is not a basis for remand. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (the court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the" ALJ's). The Court also notes that although Claimant testified at the hearing that he needs to stand up and walk around after sitting down for fifteen minutes and can only drive for fifteen minutes, (R. 17, 40–41), he reported no such limitation in his function report, instead describing hobbies and interests that consist of activities primarily done in a seated position. (R. 328–335) (Claimant reported "reading, watching tv, [and] play[ing] with pets…very well," going to church

8

and sports events for his nephews and nieces on a "regular basis," and that he can drive for up to half an hour).

A sit/stand limitation also was not corroborated by the medical evidence, nor did any doctor's opinion contained in the record indicate a limitation in this area was warranted. (R. 19, 169–177, 180–89). The state agency consultants provided the only medical opinions of record in the case, and neither opined that Claimant had greater limitations than those found by the ALJ. Indeed, the state agency consultant at the initial level opined that Claimant could perform work at a greater exertional level than the ALJ ultimately found in his RFC, but the ALJ rejected that conclusion because it specifically did not accommodate the very diagnosis Claimant now argues the ALJ ignored: his avascular necrosis in the right hip (R. 19, 169–77) ("The state agency opinion at Ex. C4A is less persuasive. On initial application, consultant Dr. Gotanco determined the claimant could perform light exertion. This is not consistent with the objective evidence at Ex. C3F, C4F, C6F, and C7F. That evidence shows the claimant has avascular necrosis in the right hip as well as degenerative disease of both knees. Although the claimant did not have notable difficulties with ambulation, the totality of the evidence is more supportive of a limitation to sedentary exertion."). The ALJ then accepted the state agency consultant's opinion at the reconsideration level that sedentary work, with other restrictions, would accommodate Claimant's symptoms. That no medical opinion stated greater limitations were necessary is fatal to Claimant's assertion of error on this point, as an ALJ need only include limitations that are supported by the medical record. *Reynolds v. Kijakazi,* 25 F.4th 470, 473 (7th Cir. 2022) (citing *Deborah M., v. Saul,* 994 F.3d 785, 791 (7th Cir. 2021); *see also, Rice*

*v. Barnhart,* 384 F.3d 363, 370 (7th Cir. 2004) ("[T]here is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ.").

Branching off slightly from the above argument, Claimant contends the ALJ erred by not asking the VE about Claimant's "well documented sitting limitations." [ECF No. 13-1] at 13–14. But the ALJ need only inquire of the VE regarding limitations he accepts as credible, or those that are supported by the record. *Simila v. Astrue,* 573 F.3d 503, 521 (7th Cir. 2009); *Yurt,* 758 F.3d at 857. As explained above, the ALJ fulsomely evaluated the limiting effects of Claimant's avascular necrosis and concluded sit/stand limitations were not supported by the record. He supported that analysis with substantial evidence from the objective medical record and the opinion of the state agency consultant on reconsideration, and so he was not required to pose hypotheticals to the VE about unsubstantiated limitations.

Additionally, although the ALJ did not inquire of the VE about the effect of sit/stand limitations on the work Claimant could perform, Claimant's attorney asked the VE that very question, and so it is of record that the VE believed the need to stand up every twenty minutes and walk around for up to ten minutes would be work preclusive. (R. 101) ("Q: With the addition of the hypothetical individual could sit for 20 minutes, but after 20 minutes, would have to get up and stretch his or her leg and walk around a little bit for between five and 10 minutes, every 20 minutes. Would that individual be able to perform any of the identified jobs? A: No, from my experience if the individual cannot sustain productivity level and is off task for more than 10 percent, than the employer would not tolerate it."). The record was

adequately developed, therefore, to allow the ALJ to make a reasoned RFC determination, which he did. That is his province, and his decision not to ask the VE about sit/stand limitations that he did not believe were supported by the record does not form an independent basis for remand here. Nor does his substantive determination that Claimant's avascular necrosis could be accommodated by the restrictions contained in the RFC, as discussed above, constitute error. At the end of the day, he built a logical bridge between his assessment of Claimant's physical limitations and the restrictions contained in the RFC, and he supported that RFC with substantial evidence from the longitudinal record.

## CONCLUSION

Accordingly, for all these reasons, Claimant's Motion for Summary Judgment [ECF No. 13] is denied and the Commissioner's Motion for Summary Judgment [ECF No. 16] is granted. It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: September 28, 2022